1  Michele Floyd (SBN 163031)
   KILPATRICK TOWNSEND & STOCKTON LLP
2  2 Embarcadero Center, Suite 1900
   San Francisco, CA 94111
3  Telephone:  (415) 273-4756
   Email:  mfloyd@ktslaw.com
4
   Joseph R. Oliveri*
5  Steven J. Harrison*
   CLARE LOCKE LLP
6  10 Prince Street
   Alexandra, VA 22314
7  Telephone: (202) 628-7400
   Email:  joe@clarelocke.com
8  Email:  steven@clarelocke.com
   *Pro Hac Vice Application Forthcoming
9
   Attorneys for Applicant Gregory Gliner
10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re Ex Parte* Application of<br><br>Gregory Gliner,<br><br>Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782<br>Granting Leave to Obtain Discovery<br>for Use in Foreign Proceedings | MISCELLANEOUS CASE NO.:<br><br>**GREGORY GLINER'S MEMORANDUM IN SUPPORT OF HIS *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

    A.    Gregory Gliner Earns a Reputation as a Successful and Ethical Businessman in the United Kingdom. ......................................................................................... 2

    B.    Mr. Gliner's Father-in-Law Passes Away and Litigation Over the Family Wealth—and a Smear Campaign Against Mr. Gliner's Family—Follow. .............. 3

    C.    Mr. Gliner Is Falsely Accused of Criminality by an Anonymous Person or Persons in an Article on the Website PoliticalLore.com. ......................................... 4

    D.    Mr. Gliner Intends to Sue the Anonymous Defamer or Defamers in the United Kingdom—And This Application Seeks Evidence of Their Identity or Identities Necessary for Him to Do So. ...................................................................................... 5

ARGUMENT ................................................................................................................... 7

I.    28 U.S.C. § 1782 Broadly Allows Discovery in Aid of Foreign Proceedings. ................... 7

II.    Mr. Gliner's Application Easily Satisfies Section 1782's Statutory Requirements. ........... 8

III.    The Discretionary *Intel* Factors All Weigh in Favor of Granting Mr. Gliner's Application. .............................................................................................................................. 9

    A.    The First *Intel* Factor Is Satisfied:  Dynadot Will Not Be a Party to the Foreign (English) Proceeding and Therefore That Court Cannot Compel Dynadot to Provide Discovery. ........................................................................................ 10

    B.    The Second *Intel* Factor Is Satisfied:  The English Court Will Accept, Not Reject, Assistance from Discovery Obtained Under Section 1782. ................ 10

    C.    The Third *Intel* Factor Is Satisfied:  This Application Does Not Attempt to Circumvent Foreign Proof-Gathering Restrictions. ................................................ 12

    D.    The Fourth *Intel* Factor Is Satisfied:  Mr. Gliner's Request is Not Unduly Burdensome. ...................................................................................................... 13

CONCLUSION ............................................................................................................... 14

FILER ATTESTATION .................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
  793 F.3d 1108 (9th Cir. 2015)..................................................................... 9

*Digit. Shape Techs., Inc. v. Glassdoor, Inc.*,
  No. 16-mc-80150, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) .................... 14

*Eurasian Nat. Res. Corp. Ltd. v. Simpson*, No.
  19-mc-699, 2020 WL 8456039 (D. Md. Jan. 6, 2020) ................................. 11

*Franklin v. Madden*,
  586 F. App'x 431 (9th Cir. 2014) ................................................................ 13

*Garneau v. City of Seattle*,
  147 F.3d 802 (9th Cir. 1998) ...................................................................... 13

*Givens v. Cal. Dep't of Corrs. & Rehab.*,
  No. 19-cv-0017, 2023 WL 6313986 (E.D. Cal. Sept. 28, 2023) ..................... 13

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) ...................................................................... 11

*Hey, Inc. v. Twitter, Inc.*,
  No. 22-mc-80034, 2022 WL 1157490 (N.D. Cal. Apr. 19, 2022).............. 2, 13, 14

*HRC-Hainan Holding Co. v. Yihan Hu*,
  No. 19-mc-80277, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020)................... 8, 13

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
  No. 19-mc-80215, 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ..................... 12

*In re Application for Appointment of a Comm'r re Request for*
  *Judicial Assistance for the Issuance of Subpoena Pursuant to 28 U.S.C. § 1782*,
  No. 11-cv-80136, 2011 WL 2747302 (N.D. Cal. July 13, 2011) .................... 10

*In re Application of Credit Suisse Virtuoso*,
  No. 21-mc-80308, 2022 WL 1786050 (N.D. Cal. June 1, 2022).................... 11

*In re Application of Eurasian Nat. Res. Corp.*,
  No. 18-mc-80041, 2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ................... 11

*In re Application of Guy*,
  No. 19-mc-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004)........................ 11

*In re Application of Joint Stock Co. Raiffeinsenbank*,
  No. 16-mc-80203, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ................... 13

*In re Application of JSC Comm. Bank Privatbank*,
  No. 21-mc-80216, 2021 WL 4355334 (N.D. Cal. Sept. 24, 2021).................. 11

*In re Application of Pishevar*,
No. 21-mc-105, 2023 WL 2072454 (D.D.C. Feb. 17, 2023)...................................... 11

*In re Application of Vahabzadeh*,
No. 20-mc-80116, 2020 WL 7227205 (N.D. Cal. Dec. 8, 2020)............................... 12

*In re Ex Parte Application of ANZ Commodity Trading Pty Ltd.*,
No. 17-mc-80070, 2017 WL 3334878 (N.D. Cal. Aug. 4, 2017) ............................. 9

*In re Ex Parte Application of Apple Retail UK Ltd.*,
No. 20-mc-80109, 2020 WL 3833392 (N.D. Cal. July 8, 2020) ................................. 1, 10, 14

*In re Ex Parte Application of Hattori*,
No. 21-mc-80236, 2021 WL 4804375 (N.D. Cal. Oct. 14, 2021) ........................... 14

*In re Ex Parte Application of Legatum*,
No. 21-mc-80032, 2021 WL 706436 (N.D. Cal. Feb. 23, 2021)............................... 2, 11, 13, 14

*In re Ex Parte Application of Motorola Mobility, LLC*,
No. 12-cv-80243, 2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) .............................. 10, 12

*In Re Ex Parte Application of Nouvel, LLC*,
No. 22-mc-4, 2022 WL 3012521,(C.D. Cal. June 8, 2022),
*adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022) ............................................ 12

*In re Ex Parte Application of Takada*,
No. 22-mc-80221, 2023 WL 1452080 (N.D. Cal. Feb. 1, 2023) ...................................... 2, 8, 14

*In re Ex Parte Application of Takagi*,
No. 22-mc-80240, 2022 WL 7620511 (N.D. Cal. Oct. 13, 2022) ........................... 8

*In re Ex Parte Application of Varian Med. Sys. Int'l AG*,
No. 16-mc-80048, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ........................... 11, 12

*In re Ex Parte Application of Yasuda*,
No. 19-mc-80156, 2020 WL 759404 (N.D. Cal. Feb. 14, 2020) ................................ 9

*In re Letters Rogatory from the Tokyo Dist.*,
539 F.2d 1216 (9th Cir. 1976)................................................................................. 1

*In re Letters Rogatory From Tokyo Dist. Prosecutor's Office*,
16 F.3d 1016 (9th Cir. 1994)................................................................................. 13

*In re Republic of Ecuador*,
No. 10-mc-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010).......................... 1, 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004). .................................................................... 7, 8, 9, 10, 12, 13

*IPCom GMBH & Co. KG v. Apple Inc.*,
61 F. Supp. 3d 919 (N.D. Cal. 2014) ..................................................................... 1

*IS Prime Ltd. v. Glassdoor, Inc.*,
No. 21-mc-80178, 2021 WL 5889373 (N.D. Cal. Dec. 13, 2021)........................... 2, 11, 14

MEM. IN SUPP. OF GREGORY GLINER'S APPLICATION PURSUANT TO 28 U.S.C. § 1782

*London v. Does,*
   279 F. App'x 513 (9th Cir. 2008) ............................................................................. 10

*Siemens AG v. W. Digital Corp.,*
   No. 13-cv-1407, 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ................................. 10

**Statutes**

28 U.S.C. § 1782 ............................................................................................................ 1, 7

**United Kingdom (England) Cases**

*Nokia Corp. v. Interdigital Technology Corp.*
   [2004] EWHC 2920 ..................................................................................................... 12

*South Carolina Co. v. Assurantie N.V.*
   [1987] 1 A.C. 24 (HC) ................................................................................................. 11

### **INTRODUCTION**

Applicant Gregory Gliner submits this Memorandum of Law in support of his *Ex Parte*[1] Application for an Order pursuant to 28 U.S.C. § 1782 requesting limited discovery from Dynadot, Inc. to aid foreign litigation in the United Kingdom.  Specifically, Mr. Gliner's Application requests discovery for a lawsuit in the United Kingdom—where he is a citizen and permanent resident— that he intends to file against the person (or persons) responsible for the publication of an article on the website PoliticalLore.com that makes numerous false and defamatory accusations against him, including allegations of embezzlement and theft.

Mr. Gliner files this Section 1782 Application as a last resort because critical evidence necessary for his U.K. lawsuit is only available in this jurisdiction.  As explained below, although Mr. Gliner intends to sue in his home country the persons responsible for publishing the false and defamatory article about him on PoliticalLore.com, the persons who operate PoliticalLore.com and authored the article have gone to great lengths to hide their identities, including by publishing the article anonymously/pseudonymously and using a privacy service offered by Dynadot to register the PoliticalLore.com domain.  But under Dynadot's Terms of Service, those persons were required to provide Dynadot "accurate and reliable contact details," including their full names, postal address, email address, telephone number, and the like.  And Dynadot will also have other information identifying them, including IP addresses.  Accordingly, Mr. Gliner's Application requests leave to issue a narrowly tailored subpoena to Dynadot for documents sufficient to identify the persons who registered, own, and/or operate PoliticalLore.com, and a one-hour deposition for Dynadot to authenticate those documents.  Only with that information can Mr. Gliner bring his U.K. lawsuit to remedy the harm that the defamatory article has caused to him and his reputation.

---

[1] "Applications brought pursuant to 28 U.S.C. § 1782 typically are considered on an *ex parte* basis, since 'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'"  *In re Ex Parte Application of Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020) (quoting *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014)); *see also In re Republic of Ecuador*, No. 10-mc-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010); *In re Letters Rogatory from the Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976).

As explained below, Mr. Gliner's Application satisfies all Section 1782 statutory requirements, and all discretionary factors that courts consider in evaluating Section 1782 Applications weigh heavily in favor of granting his Application.  In similar circumstances, courts have repeatedly granted Section 1782 Applications seeking discovery.  *See, e.g.*, *Hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034, 2022 WL 1157490, at *2-4 (N.D. Cal. Apr. 19, 2022) (granting application to discover identity of anonymous defamer); *In re Ex Parte Application of Takada*, No. 22-mc-80221, 2023 WL 1452080, at *2-3 (N.D. Cal. Feb. 1, 2023) (same; denying motion to quash subpoena); *IS Prime Ltd. v. Glassdoor, Inc.*, No. 21-mc-80178, 2021 WL 5889373, at *3-4 (N.D. Cal. Dec. 13, 2021) (same); *In re Ex Parte Application of Legatum*, No. 21-mc-80032, 2021 WL 706436, at *3 (N.D. Cal. Feb. 23, 2021) (same).  The Court should grant Mr. Gliner's Application.

## FACTUAL BACKGROUND

**A.**   **Gregory Gliner Earns a Reputation as a Successful and Ethical Businessman in the United Kingdom.**

Mr. Gliner, a dual citizen of the United Kingdom and United States, has worked tirelessly for years to become, and earn a reputation as, a successful and ethical businessman and entrepreneur.  (Gliner Decl. ¶¶ 2, 4-8.)[2]  After receiving Bachelor of Science and Arts degrees in finance and history, respectively, in the mid-2000s, Mr. Gliner earned Master of Business Administration (MBA) degrees from the London Business School and the Columbia Business School.  (*Id.* ¶ 3.)  He then entered the business and investment fields and worked at various large hedge funds in the United States and United Kingdom, as well as at one of the largest consulting firms in the world.  (*Id.* ¶ 4.)

In 2015, Mr. Gliner left the United States and moved to the United Kingdom, permanently settling in London, England in 2016, where he has since lived with his wife and their children.  (*Id.* ¶¶ 2-5.)  Also in 2015, Mr. Gliner founded Ironwall Capital Management LLP, a London-based global macro fund.  (*Id.* ¶ 5.)  Mr. Gliner has continually served as Ironwall Capital Management's

---

[2] Decl. of Gregory D. Gliner in Supp. of His *Ex Parte* Appl. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Disc. for Use in Foreign Proceedings (Apr. 11, 2024) (filed contemporaneously herewith).

Chief Investment Officer since that time. (*Id.*)  Mr. Gliner (together with his wife) also serves as a Director of Ironwall Capital Services Ltd., a London-based affiliate of Ironwall Capital Management. (*Id.*)  In addition to his work at Ironwall Capital and in the investment industry, Mr. Gliner is and has been actively involved in philanthropic endeavors in the United Kingdom, including serving for nearly seven years as a director of a charitable organization dedicated to the prevention of child abuse in the United Kingdom and the support and treatment of victims of child abuse in the United Kingdom. (*Id.* ¶ 6.)  Mr. Gliner has also authored a book, "Global Macro Trading: Profiting in a New World Economy," the proceeds of which he donated to charity. (*Id.* ¶ 7.)

Mr. Gliner's efforts and dedication have been successful, and he has earned a reputation in the United Kingdom (in England) as a successful, ethical, and upstanding investment advisor and businessman. (*Id.* ¶ 8.)

**B.**  **Mr. Gliner's Father-in-Law Passes Away and Litigation Over the Family Wealth—and a Smear Campaign Against Mr. Gliner's Family—Follow.**

Since 2015, Mr. Gliner has been married to Veronica Bourlakova. (*Id.* ¶¶ 2, 9.) Ms. Bourlakova is the daughter of Oleg and Loudmila Bourlakov, who together rose from humble beginnings in Soviet Russia and Ukraine to found and grow multi-billion-dollar businesses in a variety of industries across the globe. (*Id.* ¶ 9.)  In 2018, following the revelation that Mr. Bourlakov had taken a mistress, Mrs. Bourlakova initiated divorce proceedings. (*Id.*)  In 2021, while those divorce proceedings were still pending, Mr. Bourlakov passed away due to complications from COVID-19. (*Id.*)

Litigation over the family's wealth—including substantial litigation in the United Kingdom[3]—followed. (*Id.* ¶ 10.)  At the same time, the parties opposing Loudmila's and Veronica's claims to the family wealth (and the claims of Loudmila's other daughter, Veronica's sister Elena) began a campaign to publicly disparage their side of the family in an apparent effort to coerce them to abandon or settle their claims to the family wealth. (*Id.*)  As part of that campaign,

---

[3] *See, e.g.*, *Bourlakova & Ors v Bourlakov & Ors*, No. BL-2020-001050 (Eng. ChD.).

numerous false accusations of criminality against the family have been anonymously published online in the form of supposed news articles.  (*Id.*)

### C.   Mr. Gliner Is Falsely Accused of Criminality by an Anonymous Person or Persons in an Article on the Website PoliticalLore.com.

Mr. Gliner has discovered that he, too, has been targeted with false accusations of criminality.  (*Id.* ¶¶ 11-13.)  Specifically, Mr. Gliner learned of an article published on the website PoliticalLore.com—a website that purports to be (but is not) a legitimate news site[4]—headlined "Inheritance of Billionaire Oleg Burlakov – A Battle on an Epic Scale" (the "Article"), that lists as its author an "Edward Swensson."[5]  (*Id.* ¶ 11.)  The Article purports to describe a dispute relating to the distribution of Mr. Bourlakov's estate.  (*Id.*)  In reality, though, the Article falsely describes that dispute and makes numerous false accusations against the Bourlakovas and against Mr. Gliner and his family.  (*Id.* ¶¶ 11-13)

As relevant here, the Article makes many false, defamatory, and highly damaging accusations against Mr. Gliner, including accusations that Mr. Gliner has engaged in criminal conduct such as embezzlement and theft.  (*Id.* ¶ 12.)  The Article does so by stating, among other things, that:

- "Gliner and the Bourlakovas remembered the good old 90ies in Russia where assets could be grabbed swiftly" and "started to engage in classic corporate raiding tactics to gain control over entities that hold assets they had not yet placed their hands on";

- Gliner "us[ed]" "[a] Latvian notary ... in an attempt to obtain control over an enormous yacht built by Mr Bourlakov [sic] and to get a swift inheritance certificate" despite having no right or title to that yacht; and

- "Gliner's plan was simple: Ludmila, who had authority over Mr Bourlakov's accounts, withdraws assets which then get transferred to accounts outside Mr Bourlakova's control.  From thereon, funds would be placed in a trust and other vehicles that would ensure an [sic] juicy income stream for Veronica, Elena, Ludmila and Gliner without any need to exert oneself."

---

[4] PoliticalLore.com bears all the hallmarks of a disinformation website—not a legitimate news site. Almost all of the articles on the website are Russian-centric, exhibit poor English, and contain over-the-top anti-Western rhetoric; the website is completely devoid of advertising; and although the site contains a link for companies that wish to advertise on it, the link leads to a dead-end, thus strongly suggesting that the website is independently funded and/or relies on paid-for content.

[5] Edward Swensson, *Inheritance of Billionaire Oleg Burlakov – A Battle on an Epic Scale*, Political Lore (June 2, 2023), https://www.politicallore.com/inheritance-of-billionaire-oleg-burlakov-a-battle-on-an-epic-scale/36294.

1    (*Id.*)

2         Those statements and accusations convey categorically and demonstrably false (purported)

3    facts.  (*Id.* ¶ 13.)   Mr. Gliner has dedicated his career to being an ethical and law-abiding

4    businessman and has ***never*** engaged in any acts of embezzlement or theft of any kind.  (*Id.*)

5    Mr. Gliner has ***not*** "grabbed" "assets" that do not belong to him; he has ***not*** "engage[d] in classic

6    corporate raiding tactics" to unlawfully obtain any corporate entity's or any person's assets; he has

7    ***not*** "us[ed]" "[a] Latvian notary" to attempt to improperly take or assert dominion over a "yacht

8    built by Mr Bourlakov" or thereby sought to "get a swift inheritance certificate"; and he was ***never***

9    part of any plan to "withdraw[] assets" from "Mr Bourlakov's accounts" to obtain income for his

10   wife (Veronica), his sister-in-law (Elena), his mother-in-law (Loudmila), himself, or any other

11   person.  (*Id.*)

12        The statements and accusations plainly accuse Mr. Gliner or criminal actions and damage

13   Mr. Gliner and his reputation as an honest, upstanding, and ethical person and businessman.  (*Id.*

14   ¶¶ 8, 12-14.)  As such, they are defamatory under English law.  (Whiston-Dew Decl. ¶¶ 13-14).[6]

15        **D.    Mr. Gliner Intends to Sue the Anonymous Defamer or Defamers in the United**
16        **Kingdom—And This Application Seeks Evidence of Their Identity or Identities**
             **Necessary for Him to Do So.**

17        Because the defamatory statements and accusations in the Article have caused—and are

18   continuing to cause—substantial harm to Mr. Gliner and his reputation, Mr. Gliner intends to sue

19   the person or persons responsible for the Article's publication—that is, the person or persons who

20   operate PoliticalLore.com and/or authored the Article.  (Gliner Decl. ¶¶ 13-14; Whiston-Dew Decl.

21   ¶¶ 3, 12.)  And Mr. Gliner has retained English counsel—the law firm of Mishcon de Reya LLP

22   and Alexandra Whiston-Dew and Harry Eccles-Williams—for this purpose.  (Gliner Decl. ¶ 17;

23   Whiston-Dew Decl. ¶¶ 2-3.)

24        However, Mr. Gliner and his English counsel are unable to presently file their lawsuit

25   because they are unable to identify the person or persons who anonymously published the

26   _____

27   [6] Decl. of Alexandra Whiston-Dew in Supp. of Gregory Gliner's *Ex Parte* Appl. for an Order
     Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Disc. for Use in Foreign Proceedings
28   (Apr. 11, 2024) (filed contemporaneously herewith); *see also* U.K. Defamation Act of 1996 § 1;
     U.K. Defamation Act of 2013 §§ 5, 10.

defamatory Article.  (Gliner Decl. ¶¶ 15-17; Whiston-Dew Decl. ¶¶ 3-4; Oliveri Decl. ¶¶ 3, 8.[7]) PoliticalLore.com does not provide information tending to identify the person(s) who operate it. (Oliveri Decl. ¶ 4.)  Likewise, the persons who registered and/or operate PoliticalLore.com have taken affirmative steps to hide their identity or identities by using privacy services provided by Dynadot, Inc. ("Dynadot") to register the PoliticalLore.com domain.  (*Id.* ¶ 5.)  Thus, Mr. Gliner and his counsel have been unable to identify that person(s).  (Gliner Decl. ¶ 16; Oliveri Decl. ¶ 8.) Similarly, neither PoliticalLore.com nor the Article provide any information from which the article's author—identified in the Article as "Edward Swensson"—can be identified.  (Oliveri Decl. ¶¶ 4-5.)  Mr. Gliner's counsel have conducted detailed research to attempt to determine whether the "Edward Swensson" who is listed as the author of the Article is a real person, but those efforts identified only two people by the name "Edward Swensson" in the United States who have no apparent connections to PoliticalLore.com.  (*Id.* ¶ 7.)  As such, Mr. Gliner and his counsel have concluded that "Edward Swensson" as listed in the Article is an alias/pseudonym and/or a person located outside the United States who cannot be identified through reasonable efforts.  (*Id.*)

Dynadot, however, almost certainly possesses documents containing information that will identify or lead to the identity of the person or persons who operate PoliticalLore.com and published the Article.  (Oliveri Decl. ¶ 9.)  Persons who use Dynadot's services to register a website are required to "provide to Dynadot accurate and reliable contact details and correct and update them within seven (7) days of any change during the term of a domain name's registration, including" the person's "full name"; "postal address"; "e-mail address"; "voice telephone number"; "fax number, if available"; for organizations, association, or corporations, "the name of an authorized person for contact purposes"; "the names of the primary nameserver and secondary nameserver(s) for the associated domain name"; "the name, postal address, e-mail address, voice telephone number, and (if available) fax number of the technical contact for the associated domain name"; and "the name, postal address, e-mail address, voice telephone number, and (if available) fax

---

[7] Decl. of Joseph R. Oliveri in Supp. of Gregory Gliner's *Ex Parte* Appl. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Disc. for Use in Foreign Proceedings (Apr. 11, 2024) (filed contemporaneously herewith).

number of the administrative contact for the associated domain name.  (Oliveri Decl. ¶ 9 & Ex. 1, Dynadot Service Agreement § 2.1.)[8]

Accordingly, Mr. Gliner brings this Application to obtain from Dynadot information sufficient to identify the person or persons responsible for operating PoliticalLore.com and publishing the false and defamatory Article on it.  To Mr. Gliner's and his counsel's knowledge, Dynadot is the only available source for this information.

## ARGUMENT

**I.    28 U.S.C. § 1782 Broadly Allows Discovery in Aid of Foreign Proceedings.**

28 U.S.C. § 1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  And over time, Congress has consistently and "substantially broadened the scope of assistance federal courts could provide for foreign proceedings."  *Id.* at 247-48.  Section 1782 provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal....  The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced[.]

28 U.S.C. § 1782(a).  Thus, under Section 1782, federal courts may grant an *ex parte* application for discovery when three statutory requirements are satisfied: **(1)** the person from whom discovery is sought resides or is found in the district of the district court where the application is made; **(2)** the discovery is for use in a proceeding before a foreign tribunal; and **(3)** the application is made by an interested person.  *Id.*; *In re Republic of Ecuador*, No. 10-mc-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010).  "Once those three statutory requirements are met, a district court has

---

[8] Dynadot's Service Agreement, to which persons who use Dynadot's services agree as a condition and term of use, further provides that if a person using Dynadot's services "directly or indirectly, willfully provide inaccurate or unreliable information to Dynadot, willfully fail to update information provided to Dynadot within seven (7) days of any change, or fail to respond for over fifteen (15) days to inquiries by Dynadot concerning the accuracy of contact details associated with [the person's] domain name, then such action or inaction, as appropriate, shall constitute a material breach of this Agreement and become a basis for suspension and/or cancellation of the associated domain name registration."  (*Id.* § 2.2.)

wide discretion to grant discovery under [Section] 1782." *HRC-Hainan Holding Co. v. Yihan Hu*, No. 19-mc-80277, 2020 WL 906719, at *3 (N.D. Cal. Feb. 25, 2020).

In exercising their discretion to grant discovery, district courts consider four factors identified by the Supreme Court in *Intel*: **(1)** whether the person from whom discovery is sought is a participant in the foreign proceeding; **(2)** the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign government to U.S. federal court judicial assistance; **(3)** whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and **(4)** whether the request is unduly burdensome. *Intel*, 542 U.S. at 264-65.

As explained below, because Mr. Gliner's Application easily satisfies all three statutory Section 1782 requirements and all four discretionary factors strongly favor allowing discovery, the Court should grant his Application for limited discovery.

**II.    Mr. Gliner's Application Easily Satisfies Section 1782's Statutory Requirements.**

Mr. Gliner's Application for a narrow subpoena to Dynadot easily satisfies Section 1782's three statutory requirements.

**First**, Dynadot "resides or is found" in this District because it is headquartered and has its principal place of business in San Mateo, California.  (Oliveri Decl. ¶¶ 10-12 & Exs. 2-3.)  Under Section 1782, "[a] business entity is 'found' in the judicial district where it has its principal place of business."  *See, e.g.*, *In re Ex Parte Application of Takagi*, No. 22-mc-80240, 2022 WL 7620511, at *3 (N.D. Cal. Oct. 13, 2022); *In re Ex Parte Application of Takada*, No. 22-mc-80221, 2022 WL 4913183, at *3 (N.D. Cal. Oct. 3, 2022) (same).[9]

**Second**, Mr. Gliner's Application seeks discovery for use in a contemplated proceeding before a foreign tribunal—namely, the Courts of England and Wales in the United Kingdom.

---

[9] Indeed, Dynadot's Terms of Use, to which persons who use Dynadot's services must agree as a condition to using Dynadot's services, provide that "[a]ll legal proceedings arising out of or in connection with this Agreement, with anyone's use of this website or App or with anyone's use of [Dynadot's] Services shall be brought solely either in the United States District Court for the Northern District of California or in the Superior Court of California, San Mateo County.  You expressly submit to the exclusive jurisdiction of said courts … Each party waives any objection (on the grounds of lack of jurisdiction, forum non conveniens or otherwise) to the exercise of such jurisdiction over it by any such courts."  (Oliveri Decl. ¶ 9 & Ex. 1, Terms of Use § 3.6.)

1   As the Supreme Court has explained, the requisite foreign proceeding "need not be 'pending' or

2   'imminent'"; rather, "the 'proceeding' for which discovery is sought" only need be "in reasonable

3   contemplation."  *Intel*, 542 U.S. at 247; *see In re Ex Parte Application of Yasuda*, No. 19-mc-

4   80156, 2020 WL 759404, at *4 (N.D. Cal. Feb. 14, 2020); *In re Ex Parte Application of ANZ*

5   *Commodity Trading Pty Ltd.*, No. 17-mc-80070, 2017 WL 3334878, at *3 (N.D. Cal. Aug. 4, 2017)

6   ("It is of no import that [Applicant] has not yet filed suit[.]").  In fact, this statutory requirement is

7   satisfied even when the contemplated foreign litigation is only at the "the investigative stage."

8   *Intel*, 542 U.S. at 247; *Yasuda*, 2020 WL 759404, at *4.  Here, Mr. Gliner's English lawsuit is well

9   within "reasonable contemplation"; as described above, Mr. Gliner intends to sue the person or

10  persons responsible for publishing the Article as soon as discovery produced pursuant to this

11  Application identifies that person or person, and, demonstrating the promptness with which

12  Mr. Gliner intends to file his English lawsuit, has already retained English counsel for this purpose.

13  (Gliner Decl. ¶¶ 17-18; Whiston-Dew Decl. ¶¶ 3-4.)

14       **Third**, Mr. Gliner, as the plaintiff in his upcoming English lawsuit, qualifies as an

15  "interested party" entitled to seek discovery under Section 1782.  As the Supreme Court has

16  explained, "[n]o doubt litigants are included among, and may be the most common example of, the

17  'interested person[s]' who may invoke § 1782."  *Intel*, 542 U.S. at 256; *see also Akebia*

18  *Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015) ("An 'interested person'

19  seeking to invoke the discovery mechanism set forth under § 1782 may include 'not only litigants

20  before foreign or international tribunals, but also ... any other person [who] ... merely possess[es] a

21  reasonable interest in obtaining [judicial] assistance.'" (quoting *Intel*, 542 U.S. at 256-57)).

22  **III.   The Discretionary *Intel* Factors All Weigh in Favor of Granting Mr. Gliner's Application.**

23

24       All of the discretionary *Intel* factors likewise weigh heavily in favor of granting

25  Mr. Gliner's Application for limited discovery.

26

27

28

1

**A.      The First *Intel* Factor Is Satisfied:  Dynadot Will Not Be a Party to the Foreign (English) Proceeding and Therefore That Court Cannot Compel Dynadot to Provide Discovery.**

2

3       The first *Intel* factor weighs heavily in favor of granting discovery because Dynadot will

4    not be a party to Mr. Gliner's English lawsuit (and it has no presence in the United Kingdom).

5    (Gliner Decl. ¶ 17; Oliveri Decl. ¶ 13.).  As the Supreme Court has explained, "nonparticipants in

6    [a] foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their

7    evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542

8    U.S. at 264; *see also, e.g.*, *London v. Does*, 279 F. App'x 513, 515 (9th Cir. 2008) (granting

9    application; explaining that "evidence sought may be unattainable in the [foreign] court while it is

10   within the district court's jurisdiction and accessible in the United States"); *In re Ex Parte*

11   *Application of Motorola Mobility, LLC*, No. 12-cv-80243, 2012 WL 4936609, at *2 (N.D. Cal.

12   Oct. 17, 2012) (same); *In re Application for Appointment of a Comm'r re Request for Judicial*

13   *Assistance for the Issuance of Subpoena Pursuant to 28 U.S.C. § 1782*, No. 11-cv-80136, 2011 WL

14   2747302, at *5 (N.D. Cal. July 13, 2011).

15      Because Dynadot, a U.S. corporation without a U.K. presence, will be a nonparticipant in

16   Mr. Gliner's English lawsuit, the English Court will be unable to compel it to produce discovery

17   and this Application is the only means through which Mr. Gliner can obtain discovery from

18   Dynadot evidence necessary to his English lawsuit—namely, documents identifying or leading to

19   the identities of the persons who published the defamatory Article.  This factor thus weighs heavily

20   in favor of granting Mr. Gliner's Application.

21

**B.      The Second *Intel* Factor Is Satisfied:   The English Court Will Accept, Not Reject, Assistance from Discovery Obtained Under Section 1782.**

22

23      The second *Intel* factor—the nature of the foreign tribunal, the character of the proceedings

24   abroad, and the receptivity of the foreign government to U.S. federal court judicial assistance—

25   weighs heavily in favor of discovery where, as here, there is no "'authoritative proof that a foreign

26   tribunal would reject evidence obtained with the aid of Section 1782.'"  *Siemens AG v. W. Digital*

27   *Corp.*, No. 13-cv-1407, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013); *accord In re Ex Parte*

28   *Application of Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8,

MEM. IN SUPP. OF GREGORY GLINER'S APPLICATION PURSUANT TO 28 U.S.C. § 1782

2020).  Moreover, in evaluating this factor, courts must "err on the side of permitting discovery." *In re Application of Eurasian Nat. Res. Corp.*, No. 18-mc-80041, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018); *accord In re Ex Parte Application of Varian Med. Sys. Int'l AG*, No. 16-mc-80048, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (factor favors discovery when "'there is nothing to suggest that the [foreign] court would be affronted by [plaintiff's] recourse to U.S. discovery'" (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011)).

Notably, "no [] aspect of the nature of the English court or the character of the anticipated English proceedings weighs against [a Section 1782] application," *In re Application of Credit Suisse Virtuoso*, No. 21-mc-80308, 2022 WL 1786050, at *10-11 (N.D. Cal. June 1, 2022), and district courts routinely grant requests for discovery under Section 1782 for use in litigation in the United Kingdom.  *See, e.g.*, *IS Prime Limited v. Glassdoor, Inc.*, No. 21-mc-80178, 2021 WL 5889373, at *3-4 (N.D. Cal. Dec. 13, 2021); *In re Application of JSC Comm. Bank Privatbank*, No. 21-mc-80216, 2021 WL 4355334, at *1-4 (N.D. Cal. Sept. 24, 2021); *In re Ex Parte Application of Legatum*, No. 21-mc-80032, 2021 WL 706436, at *3 (N.D. Cal. Feb. 23, 2021).[10] Moreover, English attorney Ms. Whiston-Dew has explained in her Declaration that, based on her experience, U.K. courts—including the Courts of England and Wales—are receptive to receiving evidence obtained from U.S. courts under 28 U.S.C. § 1782 and would be so receptive in this matter.  (Whiston-Dew Decl. ¶¶ 5-12.)  Indeed, the House of Lords in *South Carolina Co. v. Assurantie N.V.* [1987] 1 A.C. 24, 42 (HC)—the "leading authority" on the issue—has expressly held that a party does nothing wrong "by seeking to exercise a right potentially available to them under the Federal law of the United States [under 28 U.S.C. § 1782]," and such applications do not "in any way depart[] from, or interfere[] with, the procedure of the English court."  (Whiston-Dew Decl. ¶ 7 & Ex. 2.)  Other English Courts are in accord, with the High Court of Justice, for example,

---

[10] *See also, e.g.*, *In re Application of Pishevar*, No. 21-mc-105, 2023 WL 2072454, at *3 (D.D.C. Feb. 17, 2023) ("The nature of the English court system … raise[s] no concerns[.]"); *Eurasian Nat. Res. Corp. Ltd. v. Simpson*, No. 19-mc-699, 2020 WL 8456039, at *1 (D. Md. Jan. 6, 2020) ("[T]here is no suggestion that the court presiding over the foreign proceedings [in the U.K.] would not be receptive to the assistance."); *In re Application of Guy*, No. 19-mc-96, 2004 WL 1857580, at *2-3 (S.D.N.Y. Aug. 19, 2004) (There is no "reason to suppose that the government of the United Kingdom would disfavor granting Applicants relief under § 1782.").

1  explaining in *Nokia Corp. v. Interdigital Technology Corp.* [2004] EWHC 2920, ¶ 23, that "[i]t is

2  legitimate for the requesting party to use the [Section 1782] request to ascertain facts and obtain

3  documents of which the requesting party is unaware, but which may be in the future deployed in

4  the English proceedings." (Whiston-Dew Decl. ¶¶ 8-12 & Exs. 3-6.)

5      The second *Intel* factor thus weighs heavily in favor of granting Mr. Gliner's Application

6  because not only is there no "authoritative proof"—or any proof whatsoever—that the English

7  Court would reject the evidence sought, but there is affirmative evidence that it would accept that

8  evidence.

9      **C.**    **The Third *Intel* Factor Is Satisfied:  This Application Does Not Attempt to Circumvent Foreign Proof-Gathering Restrictions.**

10

11      The third *Intel* factor weighs heavily in favor of discovery where, as here, there is no

12  evidence that the Application "conceals an attempt to circumvent foreign proof-gathering

13  restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65;

14  *Motorola Mobility*, 2012 WL 4936609 at *2; *Varian Med. Sys.*, 2016 WL 1161568 at *5.  Indeed,

15  absent a bad-faith attempt to undermine such restrictions or policies, this factor weighs in favor of

16  allowing discovery even where (unlike here) the documents sought would not be discoverable in

17  the foreign jurisdiction.  *Intel*, 542 U.S. at 260-63 (explaining that Section 1782 imposes no foreign-discoverability requirement).

18

19      Moreover, as courts considering Section 1782 applications have repeatedly explained, "an

20  applicant need not attempt to exhaust the discovery procedures available in the foreign court before

21  invoking section 1782 in federal court."  *In Re Ex Parte Application of Nouvel, LLC*, No. 22-mc-4,

22  2022 WL 3012521, at *4 (C.D. Cal. June 8, 2022), *adopted*, 2022 WL 2901715 (C.D. Cal. July 22,

23  2022) (denying motion to quash subpoena); *In re Application of Vahabzadeh*, No. 20-mc-80116,

24  2020 WL 7227205, at *5 (N.D. Cal. Dec. 8, 2020) (same).  Indeed, courts have "'refused to engraft

25  a quasi-exhaustion requirement onto section 1782 that would force litigants to seek information

26  through the foreign or international tribunal before requesting discovery from the district court.'"

27  *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215, 2020 WL 820327, at *6

28  (N.D. Cal. Feb. 19, 2020) (citation omitted).

Here, there is no indication that any policy of the United Kingdom—or the United States—would weigh against the limited discovery sought by Mr. Gliner; indeed, English lawyer Ms. Whiston-Dew has affirmatively explained in her Declaration that he is aware of no such "proof-gathering restrictions or policies under English law or civil procedure rules that would be circumvented by obtaining evidence pursuant to 28 U.S.C. § 1782" either in general or in this Application.  (Whiston-Dew Decl. ¶¶ 5, 12; *see also id.* ¶¶ 6-11); *see also Legatum*, 2021 WL 706436, at *3 (holding Section 1782 application was "not an attempt to circumvent proof gathering restrictions in either the United Kingdom or the United States").  Indeed, as explained above, U.S. courts have routinely granted applications under Section 1782 to obtain evidence for use in foreign proceedings in the United Kingdom.  Accordingly, the third *Intel* factor weighs heavily in favor of granting Mr. Gliner's Application.

**D.** **The Fourth *Intel* Factor Is Satisfied:  Mr. Gliner's Request is Not Unduly Burdensome.**

The fourth *Intel* factor weighs in favor of discovery where, as here, an applicant's discovery request is not "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265, as "determined by the Federal Rules of Civil Procedure," *In re Application of Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) (citing *In re Letters Rogatory From Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994)).  Under longstanding, ordinary discovery rules, "discovery 'is permitted if reasonably calculated to lead to the discovery of admissible evidence.'"  *HRC-Hainan Holding*, 2020 WL 906719, at *3 (quoting *Franklin v. Madden*, 586 F. App'x 431, 432 (9th Cir. 2014)).  And "[r]elevance for purposes of discovery is defined very broadly."  *Givens v. Cal. Dep't  of Corrs. & Rehab.*, No. 19-cv-0017, 2023 WL 6313986, at *1 (E.D. Cal. Sept. 28, 2023) (quoting *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998)).

As relevant here, courts have repeatedly held that this factor weighs in favor of granting a Section 1782 Application where the applicant seeks discovery to reveal the identity of a person who allegedly infringed his rights.  *See, e.g.*, *Hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034, 2022 WL 1157490, at *2-4 (granting Section 1782 application subpoena seeking "documents identifying the

user(s) of the three [Twitter] accounts; names and addresses of credit card holders registered on the accounts; and access logs for the dates the tweets in question were posted," and holding that the "discovery is appropriately tailored to documents and information identifying the individual(s) responsible" for alleged wrongful conduct); *In re Ex Parte Application of Takada*, No. 22-mc-80221, 2023 WL 1452080, at *2-3 (N.D. Cal. Feb. 1, 2023) (denying motion to quash subpoena issued pursuant to Section 1782 application and ordering Twitter to produce documents sufficient to identify a user of its service); *IS Prime*, 2021 WL 5889373, at *3-4 (similar); *Legatum*, 2021 WL 706436, at *3 (similar); *Digit. Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150, 2016 WL 5930275, at *2 (N.D. Cal. Oct. 12, 2016) (similar).

Here, Mr. Gliner's Application seeks only limited discovery from Dynadot necessary to identify the person or persons responsible for publishing the defamatory article: (1) documents sufficient to identify or provide information tending to identify the person or persons who own, operate, registered, and/or or engaged the services of Dynadot with regard to the website PoliticalLore.com; and documents sufficient to identify or provide information tending to identify the person identified as "Edward Swensson" in the Article who authored or contributed to the publication of the Article on PoliticalLore.com; and (2) a one-hour deposition in which a Dynadot corporate representative can authenticate the documents produced. As such, the burden on Dynadot is minimal. Such requests are routinely approved as not being unduly burdensome. *Hey, Inc.*, 2022 WL 1157490, at *2-4; *Takada*, 2023 WL 1452080, at *2-3; *In re Ex Parte Application of Hattori*, No. 21-mc-80236, 2021 WL 4804375, at *5 (N.D. Cal. Oct. 14, 2021); *Apple Retail UK Limited*, 2020 WL 3833392, at *4.[11] Accordingly, this final *Intel* factor also weighs heavily in favor of granting Mr. Gliner's Application.

## CONCLUSION

For the foregoing reasons, Mr. Gliner respectfully requests that the Court grant his Application and issue an Order authorizing the issuance of the subpoenas attached to his

---

[11] Mr. Gliner's counsel will, of course, meet and confer with Dynadot's counsel to discuss ways to obtain this discovery as efficiently and with as little burden as possible.

Application as **Exhibit B** and **Exhibit C**.  A Proposed Order is also attached to Mr. Gliner's

Application as **Exhibit A**.


Dated:  April 11, 2024                                    KILPATRICK TOWNSEND & STOCKTON LLP

                                                                              By:     _/s/ Michele Floyd_____
                                                                                        Michele Floyd (SBN 163031)

                                                                              CLARE LOCKE LLP

                                                                              By:     _/s/ Joseph R. Oliveri_____
                                                                                        Joseph R. Oliveri* (DC Bar No. 994029)
                                                                                        *_Pro Hac Vice_ Application Forthcoming

                                                                              _Attorneys for Applicant Gregory Gliner_

**FILER ATTESTATION**

In accordance with Civil Local Rule 5-1(h)(3), I hereby certify that I have authorization to file this document from the signatories above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.  Executed on this 11th day of April, 2024 at San Francisco, California.

        */s/ Michele Floyd*
        Michele Floyd